UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DR. DAWN B. McLIN                                                                                           PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:14cv636-DPJ-FKB

DR. RICHARD CHILES, et al.                                                                              DEFENDANTS

ORDER

This race- and gender-discrimination case is before the Court on Defendants' Motion to Dismiss, to Partially Dismiss, or in the alternative, for Qualified Immunity [13]. For the reasons that follow, the motion is denied as to the Title VII failure-to-promote claim against JSU involving the Director of Clinical Training Ph.D. Program position but granted as to the remaining claims against JSU and as to the claims against Drs. Richard Chiles and Lawrence Potter.

I.       Facts and Procedural History

Plaintiff Dr. Dawn B. McLin joined Defendant Jackson State University's ("JSU") Psychology Department as an assistant professor in 2004. In 2010, JSU promoted McLin to associate professor and awarded her tenure. McLin claims that—beginning in 2010—Defendants discriminated against her in the terms and conditions of her employment because of her race (African-American) and gender (female). More specifically, McLin complains about the following incidents:

•        In 2010, Interim Chair of the Psychology Department, Defendant Dr. Richard Chiles, withdrew his predecessor's recommendation to terminate Dr. Keith Hudson, an African-American male, as an associate professor and coordinator of undergraduate studies. McLin asserts that she is more qualified than Hudson to serve as coordinator of undergraduate studies, a position which provides Hudson with supplemental pay that "pushe[s] his salary above Dr. McLin['s]." Am. Compl. [10] ¶ 10.

- Dr. Chiles selected Dr. Bryman Williams, an African-American male, to serve as the Director of the Clinical Training Ph.D. program, without posting that position.  McLin asserts that Williams's salary is "almost double" her salary and claims that Williams was less qualified for the Director of Clinical Training Ph.D. program than McLin.  *Id*. ¶ 12

- "In 2012, JSU hired Dr. Michael Moore, a white male, to serve as an assistant professor.  JSU paid Dr. Moore nearly the same rate of pay as Dr. McLin, whose work as an associate professor with tenure requires greater skills and responsibilities than the assistant professor's position held by Dr. Moore."  *Id.* ¶ 14.  McLin claims that Defendant Dr. Lawrence Potter, the former Dean of JSU's College of Liberal Arts, "advocated for Dr. Moore to receive substantially the same salary as Dr. McLin whose rank and experience far exceeded Dr. Moore."  *Id.* ¶ 15.

In her Amended Complaint, McLin asserts Title VII and Equal Pay Act claims against JSU based on alleged race and gender discrimination.  She likewise sues Chiles and Potter in their individual capacities under §§ 1983 and 1981.  Defendants moved to dismiss, McLin responded in opposition, and Defendants filed a reply.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II. Standard

When considering a motion to dismiss under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Ordinarily, a court considering a Rule 12(b)(6) motion should limit its review to the contents of the pleadings, including "documents either attached to or incorporated in the complaint." *Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012) (internal quotation marks omitted). In this case, McLin attached to her Response a number of documents that are not properly considered at the Rule 12(b)(6) stage. Likewise, Defendants discuss evidence beyond the pleadings. Nevertheless, the Court declines to convert Defendants' motion to one for summary judgment under Rule 12(d). *See* Fed. R. Civ. P. 12(d) (explaining that Court must convert 12(b)(6) motion into motion for summary judgment if it considers matters outside the pleadings).

III.   Analysis

    A.   Race Discrimination

Defendants assert that McLin's race-discrimination claim fails both because she did not administratively exhaust it and for lack of an adverse employment action.

        1.   Exhaustion Under Title VII

JSU seeks dismissal of McLin's Title VII claim for failure to exhaust.[1] "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "The scope of a Title VII

---

[1] This portion of the motion does not address McLin's claim under § 1981, nor could it. *See Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1050 (5th Cir. 1982) ("The use of section 1981 as an avenue for redress of employment discrimination is not constrained by the administrative prerequisites [under] Title VII . . . .").

complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). "[T]he proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against [it]." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272–73 (5th Cir. 2013) (citation and punctuation omitted).

In this case, McLin filed a charge of discrimination with the EEOC in which she indicated discrimination based on sex; she did not check the box for "race" discrimination. Compl. [1-1] Ex. A. The narrative portion of the charge then explains:

> During my employment, I am being subjected to disparate terms and conditions of employment as it relates to my base salary and the base salary of two male Assistant Professors.
>
> . . . .
>
> I believe that I have been discriminated against because of my sex/female in violation of Title VII of the Civil Rights Act of 1964; as amended, inasmuch as: Dr. Michael Moore, a White male was hired on August 1, 2012, as an Assistant Professor without tenure at a much higher rate of pay than is normally given to individuals hired in that position. His base salary is approximately $90 less than the base salary I am being paid as an Associate Professor with tenure. I also learned that for the last five years Dr. Keith Hudson, a Black male Assistant Professor has been paid a much higher salary than me because he has been receiving a supplement which increased his base salary, whereas I have not been receiving those benefits.

*Id.* McLin asserts that her reference to Moore's race "put the defendants on notice that she intended to pursue a race discrimination claim." Pl.'s Mem. [17] at 3. But the weight of authority rejects her argument.

4

As an initial point, McLin's failure to check the "race" box on her charge is not alone fatal. *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). But merely identifying one comparator as "White" would not cause JSU to reasonably expect a race-discrimination investigation. This is especially true when McLin never identifies her own race; later alleges that another comparator is "Black"; and states explicitly that she has suffered discrimination "because of [her] sex/female." Compl. [1-1] Ex. A.

The combination of not checking the "race" box and not describing a race claim leaves a failure to exhaust. *See, e.g.*, *Castro v. Tex. Dep't of Criminal Justice*, 541 F. App'x 374, 379 (5th Cir. 2013) (finding failure to exhaust under similar circumstances); *Kretchmer v. Eveden, Inc.*, 374 F. App'x 493, 495 (5th Cir. 2010) ("Merely stating that he 'was ultimately replaced by a woman in her 30's' is insufficient to place Eveden on notice that Kretchmer would be pursuing a sex discrimination claim, particularly when it would seem the statement was made in support of Kretchmer's age discrimination claim by indicating the age of the woman in question."); *Johnson v. Pointe Coupee Parish Police Jury*, 261 F. App'x 668, 670 (5th Cir. 2008) (finding failure to exhaust ADEA claim when plaintiff failed to check appropriate box and his description did not mention age discrimination); *Luna v. Lockheed Martin Corp.*, 54 F. App'x 404 (5th Cir. 2002) (finding failure to exhaust national-origin claim where plaintiff failed to check box or describe alleged claim). McLin has not exhausted her Title VII race-discrimination claim. It is therefore dismissed.

    2.    Adverse Employment Action

With respect to the § 1981 claim (and alternatively as to the Title VII claim), Defendants assert that McLin has not stated a claim for race discrimination. To state a prima facie case of

race discrimination involving "discriminatory compensation, a plaintiff must prove '(1) that she is a member of a protected class and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility.'" *Sanders v. W. Water Features, Inc.*, 248 F. App'x 576, 577 (5th Cir. 2007) (quoting *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)).

McLin's sole claim for race discrimination relates to an alleged pay disparity between herself and Moore, a white male. But the Amended Complaint does not allege that McLin "is paid less than" Moore. Instead, it states the opposite: "JSU paid Dr. Moore nearly the same rate of pay as Dr. McLin." Am. Compl. [10] ¶ 14. So what McLin really contends is that JSU paid the white comparator too much, though it paid him less than it paid her. Because McLin does not aver that she was "paid less than" Moore, she fails to state a race-discrimination claim against JSU, Chiles, or Potter. *See Vital v. Nat'l Oilwell Varco*, No. H–12–1357, 2014 WL 4983485, at 23 (S.D. Tex. Sept. 30, 2014) (granting summary judgment on race-discrimination-in-compensation claim because plaintiff was paid more than alleged comparator).

B. Gender Discrimination

1. Discrepancies in Compensation[2]

McLin asserts gender-discrimination claims under Title VII, the Equal Pay Act (EPA), and § 1983 stemming from alleged disparities in compensation between herself and her male colleagues. The elements of a Title VII gender-based wage-discrimination claim are the same as

---

[2]At one point in her Response, McLin states that she "did not make" a claim that "she was paid less than a nonmember for work[] requiring substantially the same responsibility." Pl.'s Mem. [17] at 7. While this initially appears to waive the wage claim, McLin elsewhere seems to pursue it. Therefore, out of caution, the Court will address the claim.

those listed above for McLin's race claim. *See Gerald v. Univ. of So. Miss.*, No. 2:12cv147-KS-MTP, 2014 WL 172113, at *14 (S.D. Miss. Jan. 15, 2014) (listing elements, to include membership in a protected class and receipt of compensation "less than a nonmember for work requiring substantially the same responsibility" (quoting *Uveido*, 738 F.2d at 1431)). To state a prima facie case under the EPA, McLin must allege that: "(1) [JSU] is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as an employee of the opposite sex; and (3) she was paid less than the employee of the opposite sex." *Phillips v. TXC Corp.*, 194 F. App'x 221, 224 n.5 (5th Cir. 2006).

Looking at the Amended Complaint, McLin offers three male employees as comparators: Drs. Moore, Hudson, and Williams. As noted above, McLin alleges that she was paid more than Moore, so she fails to state a gender-discrimination claim as to him. As to Hudson and Williams, McLin avers that both held extra duties. She alleges that Hudson "earned supplemental pay as the coordinator of undergraduate studies," which "pushed his salary above Dr. McLin." Am. Compl. [10] ¶ 10. She alleges that Williams "serve[d] as the director of the Clinical Training Ph.D. program," which resulted in his salary being higher than "all the full-time female tenured faculty members . . . in the Department of Psychology." *Id.* ¶ 12. Simply put, McLin does not allege that "she performed work . . . requiring equal skill, effort, and responsibility" as Hudson and Williams, so she fails to state a gender-discrimination claim under the EPA. She similarly

fails to satisfy Title VII's requirement that she and the comparators shared "substantially the same responsibility." *Uveido*, 738 F.2d at 1431.[3]

        2.       Other Terms and Conditions of Employment

Finally, McLin alleges "that the defendants treated Dr. Keith Hudson and Dr. Bryman Williams more favorably than they treated her in the terms and conditions of her employment." Pl.'s Mem. [17] at 7. Specifically, she alleges that Defendants failed to place her in the coordinator of undergraduate studies position Hudson held or the Director of Clinical Training Ph.D. Program position Williams held. Am. Compl. [10] ¶¶ 10–12. She therefore avers in her "cause of actions" that Defendants denied her "opportunities to earn more money on the basis of her sex . . . ." *Id.* ¶ 18.

To state a prima facie case on a failure-to-promote claim, McLin must allege "that: (1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position was filled by someone outside the protected class." *McDonald v. Entergy Operations, Inc.*, 75 F. App'x 279, 280 (5th Cir. 2003); *see also Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999) (describing second element as requiring proof that "she sought and was qualified for an available employment position"). "Failure to apply for a disputed promotion

---

[3]McLin does aver on three occasions that JSU "paid her less than whites and males, whose work required less skill, effort and responsibility under similar working conditions." Am. Compl. [10] ¶ 18; *see also id.* ¶¶ 13, 16. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. As *Iqbal* instructs, the court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The remaining well-pleaded factual allegations are assumed true, and the court "then determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* McLin's recitation of the elements is not assumed to be true, and her remaining averments fail to state a plausible claim.

will bar a 'failure to promote' claim absent a showing that such an application would have been a futile gesture." *Irons v. Aircraft Serv. Int'l*, 392 F. App'x 305, 312 (5th Cir. 2010). But "where a vacant position [is] not posted," some courts have held that "a formal application will not be required" so long as the plaintiff shows "she expressed some interest in a promotion or that the employer 'had some reason or duty to consider [her] for the post.'" *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F. Supp. 802, 818 (S.D. Tex. 1998) (collecting cases) (citations omitted) (final alteration in original).

As to Hudson's coordinator of undergraduate studies position, McLin does not allege that it was available or that she sought it. In fact, she alleges just the opposite: Hudson was already serving as coordinator of undergraduate studies when Chiles became interim chair of the department and decided to keep Hudson in that position. Am. Compl. [10] ¶ 10. "An employer does not discriminate . . . illegally if it has no job opening." *Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 691 (5th Cir. 2007) (reversing judgment on jury verdict for plaintiff and rendering for employer). JSU's failure to remove Hudson from his position and promote McLin in his stead does not state a failure-to-promote claim. *Id*.

Williams's Director of the Clinical Training Ph.D. Program position presents a different scenario. McLin alleges that "JSU did not post the position of the Director of Clinical Training Ph.D[.] program before selecting" Williams. Am. Compl. [10] ¶ 12. And she asserts that she "was seeking an adjustment in her salary as well as other opportunities to earn additional income within the department." *Id.* ¶ 15. At the pleading stage, McLin's allegations with regard to Williams's alleged promotion state Title VII and § 1983 gender-discrimination claims against

JSU and Chiles. There is no allegation that Potter was involved in this decision, so he is dismissed as to all counts.

   C.  Qualified Immunity as to Individual-Capacity Claims against Chiles and Potter

Chiles and Potter also assert that they are entitled to qualified immunity on McLin's claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

> Because qualified immunity constitutes an immunity from suit rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . as [i]nquiries of this kind can be peculiarly disruptive of effective government. Thus, adjudication of qualified immunity claims should occur at the earliest possible stage in litigation.

*Id.* (alterations in original) (emphasis deleted) (citations and internal quotation marks omitted). "If qualified immunity is raised in a motion to dismiss, 'it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness."'" *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 239 (5th Cir. 2008) (per curiam) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

To determine if an individual is entitled to qualified immunity, the court applies a two-step analysis. "First, [the court] ask[s] whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated

the plaintiff's constitutional rights." *Id.* at 238 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008) (per curiam). The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted).

McLin attempts to defeat qualified immunity by citing her "constitutional right to be free from discrimination in compensation." Pl.'s Mem. [17] at 10. But as explained above, McLin has not pleaded a facially plausible claim that she suffered race or sex discrimination related to her compensation. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) ("Employment discrimination claims brought under 42 U.S.C. §§ 1981[ and] 1983 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII."). Absent an allegation that she was subjected to discrimination in compensation, McLin fails to surpass the first prong of the qualified-immunity defense. And it otherwise follows that neither Chiles nor Potter acted in an objectively unreasonable way. Accordingly, Chiles and Potter are alternatively entitled to qualified immunity on the compensation claims.

Finally, with respect to the promotion claims, the decision regarding Hudson fails to state a constitutional violation for the reasons already stated. Moreover, McLin cites no clearly established authority that an employer has a constitutional duty to discharge one employee and

then promote another. So Chiles would be entitled to qualified immunity on that claim as an alternative basis for dismissal.

Chiles likewise seeks qualified immunity as to the surviving claim over Williams's Clinical Training Ph.D. Program position. Defs.' Mem. [14] at 13. In response, McLin observes that she has a constitutional right to be free from discrimination in *compensation*, which is obviously true. Pl.'s Resp. [17] at 10. But she fails to directly address qualified immunity with respect to this failure-to-promote claim. *See generally id.* Even assuming a constitutional issue, McLin has not shown that Chiles was objectively unreasonable with respect to this part of the claim. Chiles is therefore dismissed.[4]

IV.  Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion to Dismiss, to Partially Dismiss, or in the alternative, for Qualified Immunity [13] is denied as to the Title VII failure-to-promote claim against JSU involving the Director of Clinical Training Ph.D. Program position but granted as to the remaining claims against JSU and the claims against Chiles and

---

[4]Chiles and Potter alternatively argue that McLin's compensation claims under §§ 1981 and 1983 "should be dismissed because she brings identical Title VII and Equal Pay Act . . . claims against JSU." Defs.' Mem. [14] at 11. Defendants' argument finds support in *Suter v. Univiversity of Texas at San Antonio*, 859 F. Supp. 2d 851, 854–8 (W.D. Tex. 2012) (collecting cases), *aff'd* 495 F. App'x 506, 512 n.4 (5th Cir. 2012) (agreeing, in dicta, that plaintiff's § 1983 claim was redundant of Equal Pay Act claim and therefore subject to dismissal). That said, the Fifth Circuit has also held that Title VII is not an exclusive remedy. *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 549–50 (5th Cir. 1997). Regardless, there is no need to sort through the distinction in these cases because McLin offered no response to this argument, and it is merely an alternative basis to dismiss the individual compensation claims against Chiles and Potter.

Potter. The parties are instructed to contact the chambers of Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to set the case for a Case Management Conference.

**SO ORDERED AND ADJUDGED** this the 3rd day of March, 2015.

                                          s/ *Daniel P. Jordan III*
                                          UNITED STATES DISTRICT JUDGE